UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK         X
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| BRIAN FIELMAN, on behalf of himself and all others similarly situated, | : | **07 CIV 6815 (CLB)** |
| | : | |
| | : | **ECF FILING** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEPSICO, INC., THE PEPSI BOTTLING GROUP, INC., and PEPSI BOTTLING VENTURES LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... i

INTRODUCTION ...............................................................................................1

ALLEGATIONS ................................................................................................3

ARGUMENT.....................................................................................................4

   I. Standard of Review ...................................................................................4

   II. Federal Law Preempts Plaintiff's State Law Claims ...........................................5

      A. Plaintiff's State Law Claims Are Expressly Preempted ..................................6

         i. FDCA Defines a Standard of Identity for "Purified Water" That Explicitly Exempts Those Who Sell "Purified Water" from Having to Identify the Source of the Water.........6

         ii. The FDCA Preempts State Requirements That Are Not Identical to the FDCA Standard of Identity ............................................................................7

         iii. Plaintiff's Claims Here Are Preempted Because They Would Impose Requirements That Are Not Identical to the FDA Requirements for Bottled Water ..............................11

   III. PLAINTIFF'S CLAIMS ARE ALTERNATIVELY IMPLIEDLY PREEMPTED BY FEDERAL LAW.............................................................................................13

   IV. PLAINTIFF HAS NOT ADEQUATELY AND/OR PLAUSIBLY ALLEGED STATE LAW CAUSES OF ACTION...............................................................................16

      A. Plaintiff Has Failed to Adequately Allege Injury Required by GBL Section 349 ...........16

      B. Plaintiff Has Failed to Adequately Allege Any Deceptive or Misleading Act or Statement ..................................................................................................18

      C. Plaintiff Has Failed to Adequately Allege That *Aquafina* Is Not Fit for Its Intended Use ..................................................................................................21

      D. Plaintiff Has Failed to Adequately Allege Privity with Defendants Sufficient to Sustain Implied Breach of Warranty Claim for Economic Losses...................................22

      E. Plaintiff Has Failed to Adequately Allege a Claim for Unjust Enrichment ....................23

CONCLUSION................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Am. Dredging Co. v. Plaza Petroleum Inc.*,
    799 F. Supp. 1335 (E.D.N.Y. 1992)................................................................................22-23

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*,
    2007 U.S. Dist. LEXIS 43508 (S.D.N.Y. June 13, 2007) ......................................................5

*Arnold v. ABC, Inc.*,
    2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007) .........................................................4

*Baron v. Pfizer, Inc.*,
    840 N.Y.S.2d 445 (2007)................................................................................................ 17, 24

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005) ................................................................................................9-10, 13

*Bell Atl. Corp. v. Twombly*,
    127 S.Ct. 1955 (2007) ..................................................................................................5, 16

*Bildstein v. MasterCard Int'l Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ......................................................................... 16, 17

*Brandt v. CremaLita Mgmt.*,
    2006 N.Y. Misc. LEXIS 4101 (N.Y. Sup. Ct. June 9, 2006) ................................................18

*C.E.R. 1988, Inc. v. Aetna Casualty and Surety Co.*,
    386 F.3d 264 (3d Cir. 2004) ..............................................................................................14

*Cipollone v. Liggett Group Inc.*,
    505 U.S. 504 (1992) ................................................................................................5-6, 9, 13

*City Nat'l Bank of FL v. Morgan Stanley DW, Inc.*,
    2007 WL 927428 (S.D.N.Y. Mar. 29, 2007) ........................................................................2

*Clarke v. LR Systems*,
    219 F. Supp. 2d 323 (E.D.N.Y. 2002)..................................................................................21

*Converse, Inc. v. Norwood Venture Corp.*,
    1997 WL 742534 (S.D.N.Y. Dec. 1, 1997) ...........................................................................2

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ..................................................................................................4

i

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998) .......................................................................19, 20-21

*De Abreu v. Bank of Am. Corp.*,
    2007 U.S. Dist. LEXIS 66597 (S.D.N.Y. Sep. 10, 2007) .......................................................5

*Donahue v. Ferolito, Vultaggio & Sons*,
    786 N.Y.S.2d 153 (1st Dep't 2004) ..................................................................17-18, 21-22

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990) ............................................................................................................ 8-9

*Fox v. Cheminova*, Inc., 387 F. Supp. 2d 160 (E.D.N.Y. 2005)................................................14

*Fraker v. KFC Corp.*,
    2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 27, 2007) ....................................................15

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ............................................................................................................13

*In re Am. Express Co. S'holder Litig.*,
    39 F.3d 395 (2d Cir. 1994) ..................................................................................................20

*In re Motel 6 Sec. Lit.*,
    1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. Apr. 2, 1997) .......................................................24

*In re Motel 6 Secs. Litig.*,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) .................................................................................24

*Inter Impex S.A.E. v. Comtrade Corp.*,
    2004 U.S. Dist. LEXIS 24431 (S.D.N.Y. Dec. 2, 2004) .....................................................22

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. June 14, 2007)....................................................................................5

*Karam Prasad, LLC v. Cache, Inc.*,
    2007 U.S. Dist. LEXIS 63052 (S.D.N.Y. Aug. 27, 2007).....................................................5

*Kramer v. Pollock-Krasner Found*,
    890 F. Supp. 250 (S.D.N.Y. 1995).......................................................................................24

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
    326 F. Supp. 2d 434 (S.D.N.Y. 2004) .................................................................................20

*Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*,
    504 N.Y.S.2d 192 (N.Y. App. Div. 1986) ...........................................................................23

*McMullen v. Medtronic, Inc.*,
    421 F.3d 482 (7th Cir. 2005),
    *cert. denied*, 547 U.S. 1003 (2006) ...................................................................... 13

*Mills v. Giant of Maryland, LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006) ................................................................. 10-11

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................................... 8

*Pinckney v. Zep Mfg., Co.*,
    1997 WL 204903 (N.D.N.Y Apr. 15, 1997) ......................................................... 21

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) ................................................................. 23

*Redtail Leasing, Inc. v. Bellezza*,
    1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sept. 30, 1997) ................................... 24

*Samuels v. Old Kent Bank*,
    1997 WL 458434 (N.D. Ill. Aug. 01, 1997) ......................................................... 21

*Santoro v. Donnelly*,
    340 F. Supp. 2d 464 (S.D.N.Y. 2004) ................................................................. 21

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ......................................................................................... 17-19

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001) ............................................................... 4-5

*Strishank & Assocs., P.C. v. Hewlett Packard Co.*,
    752 N.Y.S.2d 400 (2d Dep't 2002) ...................................................................... 20

*Tandy Computer Leasing v. A.T.C. Control Serv., Inc.*,
    526 N.Y.S.2d 327 (N.Y. Sup. Ct. 1988) ............................................................... 23

*Tyler v. Kawaguchi Inc.*,
    2006 WL 581184 (W.D.N.Y. Mar. 8, 2006) ........................................................ 21

*Vigiletti v. Sears, Roebuck & Co.*,
    838 N.Y.S.2d 785 (2007) ...................................................................................... 17

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005), *cert. denied*, 127 S. Ct. 2093 (2007) ......................... 5

*Williams v. Gerber Products Co.*,
    439 F.Supp.2d 1112 (S.D. Cal. 2006) .................................................................. 20

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) ...................................................................24

## STATUTES & RULES

7 U.S.C. § 136v(b) .........................................................................................................9

21 U.S.C. § 301 et seq. ....................................................................................................6

21 U.S.C. § 337(a) .........................................................................................................14

21 U.S.C. § 341 ...............................................................................................................6

21 U.S.C. § 343(a) ...........................................................................................................7

21 U.S.C. § 343(g) ...........................................................................................................7

21 U.S.C. § 343-1 ...............................................................................................2, 7-8, 11

21 U.S.C. § 343-1(a)(1) .......................................................................................1, 8, 10, 25

21 U.S.C. § 343-1(b) ........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 4

N.Y. GEN. BUS. LAW§ 349 ......................................................................................Passim

N.Y. GEN. BUS. LAW §350 .............................................................................................17

## OTHER AUTHORITIES

21 C.F.R. § 100.1(c)(4)(i)-(ii)......................................................................................8, 10

21 C.F.R. § 165.110 .......................................................................................................14

21 C.F.R. § 165.110(a) .....................................................................................................6

21 C.F.R. § 165.110(a)(2)(iv).......................................................................................2, 7

21 C.F.R. § 165.110(a)(3)(ii)......................................................................................2, 7,12

40 C.F.R. § 141.2 .............................................................................................................6

136 CONG. REC. H. 5836 ...............................................................................................14

136 CONG. REC. H. 5843 ...............................................................................................14

Beverages: Bottled Water, 58 Fed. Reg. 393 (Jan. 5, 1993) (to be codified at 21 C.F.R.
    pts. 103, 129, 165, and 184)......................................................................................15

Beverages: Bottled Water, 60 Fed. Reg. 57,076 (Nov. 13, 1995) (to be codified at 21
    C.F.R. pts. 103, 129, 165, and 184)...................................................................... 7, 8, 12, 19

U.S. Const., art VI, cl. 2 .......................................................................................................... 5-6

Defendants PepsiCo, Inc., ("PepsiCo") The Pepsi Bottling Group, Inc., and Pepsi Bottling Ventures LLC ("Defendants") respectfully submit this Memorandum in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims against Defendants should be dismissed because: (a) they are all expressly preempted by federal law, specifically, the express preemption provision of Section 403A of the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 343-1(a)(1); (b) they are alternatively preempted because of the comprehensive nature of the federal regulation concerning standards of identity; and/or (c) they do not adequately and "plausibly" allege facts sufficient to sustain the various state law or common law claims including inadequate pleading of (i) a deceptive act required by N.Y. GEN. BUS. LAW ("GBL") §§ 349 *et seq.*; (ii) an injury required by GBL §§ 349 *et seq.*; (iii) a product that was not fit for merchantability; (iv) a direct relationship between the parties or privity; or (vi) an independent unjust enrichment claim.

## <u>INTRODUCTION</u>

This putative nationwide class action is brought by Brian Fielman, who alleges that he and all other members of the class were misled by alleged "mislabeling" of PepsiCo's *Aquafina* brand bottled water. The alleged mislabeling was a purported failure to inform consumers concerning the source of the bottled water. Plaintiff alleges that he thought that *Aquafina* came from a "more pure" source and did not realize that the actual source of *Aquafina* was community water or the same source as tap water. The purported class includes "all individuals in the United States who purchased *Aquafina* from the date of its introduction through the present (the 'Class Period')." (Class Action Complaint And Jury Demand For Trial, "Cmplt." ¶ 17.).

Plaintiff's state law claims, if successful, would require PepsiCo to change the labeling of *Aquafina* water to disclose to consumers the source of its bottled water and would forbid certain terms or images. Yet that relief would impose state requirements that are both in direct conflict

1

with FDA regulations and would also be different from, and in addition to, FDA regulations for bottled water. These regulations expressly permit the identification of water from a community water source that undergoes certain processes (like *Aquafina* water) to be called "purified water" or "purified drinking water", and which specifically do not require identification the source of "purified drinking water". *See* 21 C.F.R. § 165.110(a)(2)(iv) & (3)(ii). Congress expressly prohibited states from "directly or indirectly establish[ing]…any requirement for a food which is the subject of a [federal] standard of identity . . . that is not identical to such standard of identity," unless the state first obtains an exemption from the FDA. 21 U.S.C. § 343-1. These state law claims are therefore directly preempted by federal law. Even if not directly preempted, the comprehensive nature of the FDA regulations and the FDA's interest in uniform standards for products covered by its standard of identity are sufficient to preempt the asserted claims, as they are inconsistent with this federal legislative scheme.

Moreover, wholly apart from the issue of preemption, it is clear that Plaintiff has not adequately alleged the various causes of action.[1] Plaintiff does not plausibly allege how statements such as "pure water", or "Bottled at the source P.W.S.", or images on the label in conjunction with the clear statement that the product was "purified drinking water" could plausibly cause him or anyone else to think that the water came from "a source more pure than either tap water or rivals' water". (Cmplt. ¶ 32). The statements on their face clearly indicate that the product in the bottle is "pure" and "purified", ***not*** that it derives from a source that is

---

[1] Plaintiff asserts that Pepsi Bottling Ventures LLC and The Pepsi Bottling Group, Inc. are either agents of PepsiCo or that PepsiCo is an alter-ego of these companies. While it is not clear what role this allegation plays in any of the causes of action (if any), it clearly is an insufficient allegation of either relationship. *See, e.g., Converse, Inc. v. Norwood Venture Corp.*, 1997 WL 742534, at *4 (S.D.N.Y. Dec. 1, 1997) (dismissing allegation that some defendants acted as "agents", since "these allegations are wholly conclusory and are therefore insufficient"); *City Nat'l Bank of FL v. Morgan Stanley DW, Inc.*, 2007 WL 927428, at *4 (S.D.N.Y. Mar. 29, 2007) (dismissing alter-ego allegation because "[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability").

more pure.  Nor does Plaintiff credibly allege why the source of water that undergoes a

government-defined purification process is in any way relevant to the consumer.  This is

particularly so here, where the FDA itself found that the source of "purified drinking water" is

not a material fact in purchase decisions related to "purified drinking water".  Nor does Plaintiff

adequately allege any injury as required by the New York Unfair and Deceptive Trade Practices

Act.  Plaintiff does not allege privity or a direct relationship between himself and Defendants.

Plaintiff also fails to allege that *Aquafina* is not fit for the use for which it was intended, namely,

liquid refreshment.  Plaintiff's claims should therefore be dismissed.

## ALLEGATIONS

Plaintiff uses conclusory language to allege that Defendants mislabeled *Aquafina* and

used its website in a manner constituting an unfair and deceptive trade practice under state law, a

breach of implied warranty, and unjust enrichment.  Specifically, Plaintiff alleges that

Defendants violated various common law duties, state consumer protection statutes, such as GBL

§§ 349 *et seq.*, and other, unspecified "substantially similar statutes in effect in the other States",

(Cmplt. ¶ 44), because (a) Defendants "failed to inform consumers that the source of [*Aquafina*]

water was public tap water, not water from an inherently clean source, such as a mountain as

implied in the logo on the *Aquafina* label" (Cmplt. ¶ 1); (b) "Defendants' labels on *Aquafina*

currently state 'Bottled at the source P.W.S.'" but "do not indicate, state or imply the meaning of

'P.W.S.'" (Cmplt. ¶¶ 29-30); (c) the *Aquafina* label "contains the slogan 'Pure Water Perfect

Taste'" (Cmplt. ¶ 31); and (d) Defendants' "website fails to inform consumers that the true nature

of the source of the water marketed and sold as *Aquafina* is tap water." (Cmplt. ¶ 33).

Plaintiff claims that Defendants had an obligation under state law and/or the common law

explicitly to disclose on its label and/or its website for *Aquafina* that the source of *Aquafina*

water (before it undergoes its rigorous purification process) is a public water source, which is the

3

same source as that used by "tap" water.  Plaintiff claims that Defendants' failure to meet this obligation was inherently misleading and was somehow exacerbated by the use of the phrase "pure water" and/or an illustration of a mountain on a label and/or the statement that the source was "P.W.S.", which stands for Public Water Source.  Plaintiff alleges that he "had been misled by Defendants into purchasing *Aquafina*". (Cmplt. ¶16).

Plaintiff, however, nowhere alleges that *Aquafina* is in fact not pure water or purified drinking water.  Nor does Plaintiff allege that the water fails to meet the rigorous and overarching federal requirements for "purified drinking water".  Nor does the Complaint acknowledge that, on every label used in New York state during the relevant period, PepsiCo clearly identified *Aquafina* as "purified drinking water", which clearly identified the product and is in fact compliant with FDA regulations concerning bottled water.[2]  The Complaint does not allege any exemption from the FDA regulations for the state of New York or for any other state.

## ARGUMENT

### I.  STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must allege facts that, accepted as true, make out the elements of a claim.  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) (citation omitted).  "Broad and conclusory

---

[2]  Plaintiff's Complaint relies almost exclusively upon statements and graphics allegedly made on the *Aquafina* label.  Defendants are attaching as Exhibit 1 a declaration of Diane Petrocionne which introduces potential labels of which plaintiff may be complaining and clearly shows that the labels contains the phrase "purified drinking water". This evidence is properly considered on a motion to dismiss as it is the very object which is referred to specifically by Plaintiff in his complaint.  *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("complaint is deemed to include . . . any statements or documents incorporated in it by reference"); *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802, *3 n2 (S.D.N.Y. Jan. 29, 2007) (attaching copies of advertisement and website because documents were "integral to the complaint" and plaintiff relied on the material in crafting her allegations).

statements, coupled with a failure to allege the facts of the alleged offending conduct, are insufficient to state a claim." *Id.* The Supreme Court recently held that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Instead, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1965. In effect, a plaintiff is required to plead enough facts to state a claim to relief that is "plausible" on its face. *Id.* While *Twombly* was an antitrust action, Courts have understood that *Twombly* establishes the standard for all civil actions. *See, e.g.*, *Iqbal v. Hasty,* 490 F.3d 143, 155-58 (2d Cir. June 14, 2007); *De Abreu v. Bank of Am. Corp.*, 2007 U.S. Dist. LEXIS 66597, at *44-46 (S.D.N.Y. Sep. 10, 2007) (citing *Twombly* and dismissing unjust enrichment claim); *Karam Prasad, LLC v. Cache, Inc.*, 2007 U.S. Dist. LEXIS 63052, at *3-6 (S.D.N.Y. Aug. 27, 2007) (dismissing plaintiff's deceptive trade practices claim); *Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 2007 U.S. Dist. LEXIS 43508, at *6-13 (S.D.N.Y. June 13, 2007) (citing *Twombly* and dismissing plaintiffs' breach of warranty, unjust enrichment, and unfair competition causes of action).

## II.  **FEDERAL LAW PREEMPTS PLAINTIFF'S STATE LAW CLAIMS**

Preemption generally occurs in one of three ways: (a) "where Congress has expressly preempted state law"; (b) "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; or (c) "where federal law conflicts with state law" or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 313 (2d Cir. 2005), *cert. denied,* 127 S. Ct. 2093 (2007). The basis for any of these claims of preemption is the Supremacy Clause of Article VI of the United States Constitution, which vests Congress with the power to preempt state regulation. *Cipollone v. Liggett Group*

*Inc.*, 505 U.S. 504 (1992); U.S. Const., art VI, cl. 2 ("[T]he laws of the United States . . . shall be the Supreme Law of the land"). Congressional intent is critical to deciding whether a state law is preempted. *Cipollone*, 505 U.S. at 516.

### A. Plaintiff's State Law Claims Are Expressly Preempted

Plaintiff's claims are expressly preempted. Congress has enacted a specific preemption clause, clearly evidencing its intent to preempt state law claims that would impose requirements that are not identical to the federal requirements for bottled water. Plaintiff here seeks to require and forbid descriptions and statements not otherwise required or forbidden by the federal legislation. These requirements are therefore not identical to the federal requirements imposed by federal law and are therefore preempted.

#### i. FDCA Defines a Standard of Identity for "Purified Water" That Explicitly Exempts Those Who Sell "Purified Water" from Having to Identify the Source of the Water

The FDCA, 21 U.S.C. § 301 et seq., provides that to "promote honesty and fair dealing in the interest of consumers . . ." the FDA may promulgate "regulations fixing and establishing for any food . . . a reasonable definition and standard of identity . . . ." 21 U.S.C. § 341. In 1995, the FDA adopted a standard of identity for bottled water which defines various kinds of bottled water, including "purified water," "artesian water," "ground water," "mineral water," and "spring water". 21 C.F.R. § 165.110(a). "Tap water" is not one of the permitted names for identifying bottled water or a source of bottled water under the statute. *Id.* Subsection (a)(3) identifies other statements that may or may not be made on bottled water labels. Certain types of bottled water must be identified as coming from a "community water system" (i.e. like tap water) that is defined in 40 C.F.R. § 141.2 as "a public water system which serves at least 15 service connections used by year-round residents or regularly serves at least 25 year-round residents."

This regulation is explicit that "purified drinking water"[3] does not require this statement concerning the source of the water. 21 C.F.R. § 165.110(a)(3)(ii) (labels shall state "'from a community water system' or, alternatively, 'from a municipal source' as appropriate, on the principal display panel or panels" except for water that "**has been treated to meet the definitions in paragraphs (a)(2)(iv)[purified water] and (a)(2)(vii) of this section and is labeled as such** . . .") (emphasis added). During the rulemaking process, the FDA explained this exemption, stating "[s]ource information for purified waters **is not a material fact** because the water may be significantly different in composition than other water from that particular source. Thus, the absence of source information for purified water **is not misleading** under section 403(a) of the act." Beverages: Bottled Water, 60 Fed. Reg. 57,076, 57,103 (Nov. 13, 1995) (to be codified at 21 C.F.R. pts. 103, 129, 165, and 184) (emphasis added).

The FDA provides regulations to determine whether a food (including bottled water) has been misbranded. Food shall be deemed misbranded if the labeling or advertising is false and misleading. 21 U.S.C. § 343(a). The statute further proscribes that food for which there is a standard of identity is not misbranded if "(1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard . . . ." 21 U.S.C. § 343(g). Thus, according to the FDA, bottled water which complies with the required FDA standard of identity is not misbranded and cannot be false and misleading.

      ii. The FDCA Preempts State Requirements That Are Not Identical to the FDCA Standard of Identity

In 1990, Congress amended the FDCA by enacting the Nutrition Labeling & Education Act of 1990 (the "NLEA"). The NLEA explicitly preempts state law requirements for food

---

[3] "Purified water" or "purified drinking water" is defined as water that has "been produced by distillation, deionization, reverse osmosis, or other suitable processes" and requires that purified water "meet[] the definition of 'purified water' in the United States Pharmacopeia". 21 C.F.R. § 165.110(a)(2)(iv).

subject to a federal standard of identity (like bottled water) when those requirements are not identical to the federal standard of identity.  Specifically, this statute provides that:

> no state or political subdivision of a state may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce (1) any requirement for a food which is the subject of a standard of identity under section [341 of this title] that is not identical to such standard of identity.

21 U.S.C. § 343-1(a)(1).  This preemption clause applies unless a state has petitioned the FDA for the right to exempt certain non-identical state and local requirements.  21 U.S.C. § 343-1(b). The FDA guides the states as to when to petition for such an exemption and explains that the term "not identical to" in the above provision means "that the State requirement **directly or indirectly imposes obligations** or contains provisions concerning the composition or labeling of food . . ." that are either "not imposed by or contained in the applicable provision . . ." or "[d]iffer from those specifically imposed by or contained in the applicable provision . . . ."  21 C.F.R. § 100.1(c)(4)(i)-(ii) (emphasis added).  The Complaint nowhere alleges that any such exemption was sought or obtained, and the Court can take judicial notice of its absence.

The FDA explicitly intended the standard of identity for bottled water to preempt any state standards that were not identical to it; indeed, the FDA acknowledged that "some stringent State laws will be preempted by less restrictive Federal regulations."  Beverages: Bottled Water, 60 Fed. Reg. at 57,120.  The FDA explained that "Congress apparently decided that even though Federal requirements may preempt more restrictive State requirements in certain instances, the net benefits from national uniformity in these aspects outweigh the loss in consumer protection that may occur as a result."  *Id.*  The interpretation of any preemption provision begins "with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990)).

8

In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court considered whether an express preemption provision in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") preempted various state law claims. The FIFRA preemption clause provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b). The Court explained that the term "requirements" in preemption clauses like the one in FIFRA "reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Bates*, 544 U.S. at 443; *see also Cipollone,* 505 U.S. at 521-22 (1992) (holding that the term "requirement or prohibition" in a preemption clause included common-law duties and that "common-law damages actions . . . are premised on the existence of a legal duty . . . ."). As a result, the Court found that plaintiff's "fraud and negligent failure-to-warn claims" were preempted because they were "premised on common-law rules that qualify as 'requirements for labeling or packing'" because the FIFRA rules "set a standard for a product's labeling". *Bates*, 544 U.S. at 446. The Court also noted that the preemption clause in FIFRA was limited to state law requirements that are "in addition to or different from" the requirements of FIFRA. As a result, the relevant state and common law claims were only preempted to the extent they would impose requirements on defendant that were not identical to the standards of identity under FIFRA. *Id.* at 446. The Court explained that "a manufacturer should not be held liable under a state labeling requirement . . . unless the manufacturer is also liable for misbranding as defined by FIFRA." *Id.* at 454.

The FDCA's express preemption language, like the FIFRA language, preempts "requirements" that are different than those of the FDCA. As noted *supra*, the Court in *Bates* re-affirmed that "requirements" include common law duties such as those Plaintiff seek to impose

upon Defendants in this case.  Moreover, *Bates* also explained that a preemption clause that calls for preemption of state requirements that are "different" preempts requirements that are not identical to the federal regulations.  In the FDCA, the exact language is that all state requirements "not identical to" the federal standards of identity are preempted.  21 U.S.C. § 343-1(a)(1).  As explained *supra*, the FDCA itself explains "not identical" to mean "not imposed by or contained in" or "differs from" which is even more similar to the FIFRA language.  21 C.F.R. § 100.1(c)(4)(i)-(ii).  While the FDCA preemption language is similar to the FIFRA language in these respects, it is important to note that it is also broader than the FIFRA preemption clause because, *inter alia,* it applies to all the requirements of the federal standard of identity and is not just limited to labeling and packaging (as FIFRA is) and it also preempts requirements that "directly or indirectly" impose different obligations.  As a result, the FDCA preemption clause will preempt state law in more circumstances than the FIFRA preemption clause and should be interpreted more broadly.

In *Mills v. Giant of Maryland, LLC*, the Court applied aspects of the *Bates* decision to the FDCA preemption language, while at the same time recognizing that the FDCA's preemption clause is broader than the FIFRA one.  441 F. Supp. 2d 104, 108 (D.D.C. 2006) ("The scope of FDCA's preemption clause is much broader than FIFRA's, prohibiting 'any' requirements as opposed to merely requirements 'for labeling or packing.'").  The Court in *Mills* determined that certain state law claims challenging the sufficiency of defendants' FDA-compliant labels for milk products were preempted by the FDCA express preemption provision.  *Id*. at 106.  The Court adopted the following two-prong test:  "first, whether the duty imposed by the relief which plaintiffs seek is 'a requirement for a food which is the subject of a standard of identity,' and second, whether this duty 'is identical' to the labeling requirements of the FDCA."  *Id*. at 107.

10

The Court concluded that because the claims asserted by the plaintiffs in *Mills* would require the defendants to add additional statements to the labeling and packaging for milk that were not required by the FDCA regulations, the duties underlying Plaintiff's claims were not identical requirements to the standards of identity and therefore were expressly preempted. *Id*. at 109.

      iii.  Plaintiff's Claims Here Are Preempted Because They Would Impose
           Requirements That Are Not Identical to the FDA Requirements for Bottled Water

Plaintiff's claims against Defendants in this action are clearly expressly preempted using the *Mills* two-pronged analysis. First, the relief Plaintiff seeks would impose a duty for bottled water, which is subject to a standard of identity. Second, the duty Plaintiff seeks to impose is not identical to the federal requirements for bottled water.

*Aquafina* water is undeniably a product that is subject to a standard of identity. Accordingly, it is subject to very specific federal guidelines regarding, *inter alia*, the product's labeling and advertising. Following the FDA guidelines, PepsiCo identifies *Aquafina* as "purified drinking water" on the product label. Because PepsiCo has identified *Aquafina* as "purified drinking water", PepsiCo is exempt from having to state that the source of the water it purifies and then bottles for sale is "from a community water supply" pursuant to the FDCA. Additionally, because omitting source information for purified drinking water is in complete compliance with the FDA regulations for bottled water, the *Aquafina* label is not misleading under the NLEA.

Plaintiff, however, seeks to impose precisely this requirement upon Defendants. Plaintiff alleges that Defendants have violated state law statutes and common law duties regarding bottled water by, among other things, not identifying the source of the water. Plaintiff would therefore require Defendants to make such an identification to avoid violating state requirements. But, as explained *supra*, the FDA expressly considered whether to require companies that sell "purified

11

water" to identify that the water comes "from a community water system" or "from a municipal water system" and rejected such a requirement for "purified water". 21 C.F.R. § 165.110(a)(3)(ii). The FDA considers it sufficient and not misleading to simply identify the water as "purified drinking water". The FDA explained that "the absence of source information for purified water is not misleading . . . ." because "[s]ource information for purified waters is not a material fact . . . ." Beverages: Bottled Water, 60 Fed. Reg. at 57,103. Plaintiff therefore seeks to impose requirements on Defendants which **exceed and conflict with** the requirements set by the FDA.

Similarly, Plaintiff's allegations that Defendants misleadingly used the term "pure water" or "bottled at the source P.W.S." or graphics allegedly depicting mountains in addition to the words "purified drinking water" are preempted for the same reason – these claims seek to impose requirements regarding identifying the source of water that exceed the federal standards of identity which do not forbid adding these terms to a description of "purified drinking water". The FDA has imposed branding and labeling regulations for bottled water regarding the source of water when a bottled water product claims to be "purified drinking water". In setting forth these regulations, the FDA did not enact regulations prohibiting the use of the term "pure" or "bottled at source P.W.S." or the use of any kind of graphics. Nor did the FDA prohibit adding any other advertising statements to the term "purified drinking water". In fact, the FDA stated that "manufacturers may optionally include source information on the label of purified water." *Id*. PepsiCo has opted to include some limited source information on its label, namely that *Aquafina* is "bottled at the source P.W.S". Plaintiffs allegations would impose a duty on Defendants to alter or remove the source information they have chosen to provide and to replace it with information they are specifically exempted from having to provide. This P.W.S. source

12

statement, like the other, thus fully comports with the FDA labeling requirements for optional source information. Any action seeking to impose liability for using the term "pure water" or "bottled at source P.W.S." or for including a picture of mountains *in addition* to identifying the product as "purified drinking water" would accordingly not be identical to FDA requirements because such an action would in fact impose additional requirements (forbidding additional unrelated pictures or additional true words) beyond those required by the FDA.

Accordingly, for each of the claims that Plaintiff asserts, Defendants could be held liable for violating state statutes and common law duties when their conduct was entirely consistent with FDA regulations. This means the regulations are not identical. *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006) ("State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law."). This also mandates preemption. *See Bates*, at 454 ("[A] manufacturer should not be held liable under a state labeling requirement . . . unless the manufacturer is also liable under [the federal requirement].")

III. **PLAINTIFF'S CLAIMS ARE ALTERNATIVELY IMPLIEDLY PREEMPTED BY FEDERAL LAW**

As discussed *supra*, Plaintiff's claims are expressly preempted because they seek to impose state common law duties upon Defendants which are not identical to the FDCA standard of identity for bottled water. Assuming, *arguendo*, that Plaintiff's claims are not expressly preempted, they would be, in the alternative, impliedly preempted by federal statute. Implied preemption may exist even where Congress has included an express preemption clause in a statute. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-289 (1995) (holding that despite the language in *Cipollone v. Liggett Group Inc.*, "an express definition of the pre-emptive reach of a statute . . . does not mean that the express clause entirely forecloses any possibility of implied

13

pre-emption"); *Fox v. Cheminova, Inc.*, 387 F. Supp. 2d 160, 168 (E.D.N.Y. 2005).

      The general nature of the FDCA standards of identity, and specifically the standard for bottled water, are so comprehensive "that the application of state tort law would impede Congress's objectives." *See C.E.R. 1988, Inc. v. The Aetna Casualty and Surety Co.*, 386 F.3d 264, 270 (3d Cir. 2004) (concluding that plaintiff's tort claims was impliedly preempted by the comprehensive flood insurance program Congress established under NFIA). The comprehensive nature of the bottled water regulations is evident in the detailed nature of the prescriptions related to the permitted descriptions of bottled water, the various allowable nomenclature for eight different kinds of water, the regulations of other label statements and quality regulations. *See, e.g.*, 21 C.F.R. § 165.110. Moreover, the FDCA specifically prohibits private actions to enforce standards of identity and limits enforcement of its provisions to governmental agencies. 21 U.S.C. § 337(a) ("all such proceedings for enforcement or to restrain violations of [the FDCA] shall be by and in the name of the United States."). Even states are prevented from asserting claims related to a standard of identity under the FDCA unless it first notifies the Secretary of the FDA and waits a specific period of time. 21 U.S.C. § 337(a).

      One Congressional purpose in implementing the bottled water standard of identity was to provide a single uniform law for nutritional labeling. *See* 136 CONG. REC. H. 5836, 5843 ("This bill is fair to both consumers and industry in that it emphasizes disclosure of all valid and relevant information to the consumer, while providing the industry with uniformity of law in a number of important areas that will permit them to conduct their business of food distribution in an efficient and cost-effective manner."). Indeed, in proposing the standards of identity for bottled water, the FDA echoed this sentiment, stating that "[a] uniform Federal definition will ensure that consumers will be able to purchase bottled water products that are informatively and

14

consistently labeled throughout the country."  Beverages: Bottled Water, 58 Fed. Reg. 393, 395 (Jan. 5, 1993) (to be codified at 21 C.F.R. pts. 103, 129, 165, and 184).  The goal of national uniformity was to "give industry some relief from some types of State requirements that interfere with their ability to market products in all 50 States in an effective and cost-effective manner." *Id*.  Another stated purpose for implementation of the bottled water standard of identity was to "promote honesty and fair dealing in the interest of consumers".  Beverages: Bottled Water, 58 Fed. Reg. at 394. The FDA regulations therefore carefully balance the goal of promoting uniformity with the goal of protecting consumers.  *Id*.

It is clear that if the goals are (a) to ensure national uniform standards in all 50 states; and (b) to promote honesty and fair dealing, then this regulatory scheme must preempt state laws and state requirements that themselves promote honesty and fair dealing in a way that is different from the manner promoted by these federal statutes.  Allowing each state to determine standards of honesty and fair dealing on their own would result in different requirements for labeling and advertising in every state.  *See, e.g., Fraker v. KFC Corp.,* 2007 U.S. Dist. LEXIS 32041, at *10 (S.D. Cal. Apr. 27, 2007) (finding that the FDCA preempts state law).  This scheme, paired with the stated goal of uniform national standards in the labeling of bottled water, mandates implied preemption of Plaintiff's claims.  The same conclusion was reached in *Fraker,* where the Court held that plaintiff's claims regarding the branding and labeling of food products were impliedly preempted by the FDCA because "[t]o overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties."  *Fraker*, at *10-11.

Here, Plaintiff wants to impose positive and negative requirements on Defendants' advertising and labeling in New York State that are different than those required elsewhere in the

country under the FDCA.  This would frustrate the goals of Congress in passing the bottled water standard of identity, by among other things undermining the national uniformity sought by the FDCA.  As a result, these types of claims are impliedly preempted.

IV.  **PLAINTIFF HAS NOT ADEQUATELY AND/OR PLAUSIBLY ALLEGED STATE LAW CAUSES OF ACTION**

As noted *supra*, the Court has recently explained that to survive a motion to dismiss, a plaintiff has to allege more than just "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  *Twombly*, 127 S. Ct. at 1964-65.  The allegations "must be enough to raise a right to relief above the speculative level" and these allegations must be "plausible" on the face of the complaint.  *Id.* at 1965.  In *Twombly,* the plaintiffs conclusorily alleged that the defendants entered into "agreements" to "refrain from competing against one another," which plaintiffs claimed could be inferred from (a) defendants' common failure to pursue purportedly lucrative business activities; (b) statements by a CEO of one of the defendants; and (c) alleged parallel conduct by the defendants.  The plaintiffs alleged specific facts and general conclusory statements.  But, the Court held that these allegations were insufficient to survive a motion to dismiss because these allegations were not "plausible on [their] face".  *Twombly,* 127 S. Ct. at 1966, 1974.  Plaintiff here too has not adequately or "plausibly" alleged the various causes of action as detailed below.

A.  Plaintiff Has Failed to Adequately Allege Injury Required by GBL Section 349

Section 349 of the General Business Law ("GBL") requires a plaintiff to "allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."[4]  *Bildstein v. MasterCard Int'l Inc.*, 329 F.

---

[4] Plaintiff also claims to be bringing claims under a similar statute in every state.  (Cmplt. ¶44).  Plaintiff does not identify what those statutes are or how PepsiCo allegedly violated them.  These claims should also be dismissed as

Supp. 2d 410, 415 (S.D.N.Y. 2004) (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999)). Further, there must be an allegation of actual injury, not merely the alleged deceptive act, as "[i]t is well established . . . that the claimed deception cannot itself be the only injury." *Id.*; *see also Small*, 94 N.Y.2d at 55. Without an allegation that Plaintiff suffered an actual injury, his claim must be dismissed. *Vigiletti v. Sears, Roebuck & Co.*, 838 N.Y.S.2d 785, 785 (2007).

It is not sufficient under New York law to simply allege that the consumers would not have purchased this particular product. In *Small v. Lorillard Tobacco Company*, the Court rejected plaintiffs' theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." 94 N.Y.2d 43, 56 (1999). Finding this argument "legally flawed", the Court was not persuaded that the alleged deceptive act prevented plaintiffs "from making free and informed choices as consumers." *Id.* Other courts have rejected this or similar claims. *See, e.g.*, *Bildstein*, 329 F. Supp. 2d at 415 (dismissing plaintiff's claim under GBL after finding his complaint bereft of any allegation of actual injury other than the alleged deceptive act); *ee, e.g., Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (2007) ("[P]laintiff's claim sets forth deception as both act and injury and, thus, contains no manifestation of either pecuniary or actual harm.").

For example, in *Donahue v. Ferolito, Vultaggio & Sons*, the Court dismissed claims of violations of GBL §§ 349 and 350, fraud, and breach of express and implied warranties stemming from the labeling and marketing of five iced tea and fruit punch beverages. 786 N.Y.S.2d 153, 154-55 (1st Dep't 2004). Plaintiffs claimed that the marketing and labeling for

---

they are not plead with sufficient particularity and PepsiCo is not given sufficient notice even to answer, much less develop its defenses.

these products purportedly promised that consumption would improve memory, reduce stress and improve overall health. *Id.* at 154. In affirming the dismissal of the GBL claims, the court stated that the plaintiffs never alleged "that the cost of the beverages was inflated by these misrepresentations or that their health was adversely affected by drinking the beverages. Thus, they have impermissibly set up the deception as both act and injury, a theory specifically rejected by our courts." *Id.*

Plaintiff's allegations here fail for the same reasons, as he does not adequately or plausibly identify any actual injury other than the alleged deceptive conduct by Defendants. Plaintiff claims that, "[h]ad Defendants not engaged in the wrongful and deceptive conduct described *supra*, Plaintiff and members of the Class would not have purchased and/or paid the same amount for *Aquafina*, and they have therefore proximately suffered injury in fact and ascertainable losses." (Cmplt. ¶ 41). Plaintiff has not and cannot plead an actual injury under GBL § 349 simply by stating that he would not have purchased *Aquafina* in the same quantities, or at the same price, if he would have known the source of the water. *Small*, 94 N.Y.2d at 56-57; *see also Brandt v. CremaLita Mgmt.*, 2006 N.Y. Misc. LEXIS 4101, at *17 n.4 (N.Y. Sup. Ct. June 9, 2006) (rejecting plaintiffs' argument that they "would not have purchased desserts in the quantities that they did and for the prices that they did had they known the true nutritional value."). Further, Plaintiff makes no plausible and particular allegation that the alleged deception caused an inflated price for *Aquafina*. Nor does Plaintiff claim that the water was of lower quality due to its source. Plaintiff's claim for unfair and deceptive trade practices should therefore be dismissed for failure to adequately allege an actual injury.

### B.  Plaintiff Has Failed to Adequately Allege Any Deceptive or Misleading Act or Statement

Plaintiff has not adequately alleged an action or omission that is "deceptive or misleading

18

in a material way" as is required by GBL §349.  *See, e.g., Small*, 94 N.Y.2d at 55.  Plaintiff

conclusorily asserts that certain acts or omissions were deceptive, but these assertions are not

actually or "plausibly" deceptive on the face of the complaint.  Plaintiff essentially alleges that

he thought water labeled as "purified drinking water" came from a source which was "more

pure" because of the alleged fact that Defendants did not identify the source of the water other

than by the initials "P.W.S." or because they also called the water "pure water" or they included

a picture of a mountain on the label.  (Cmplt. ¶ 29-33).  Plaintiff ignores the fact that the

*Aquafina* label identifies the water as "purified drinking water".  Under the FDCA, the term

"purified drinking water" can only be used if the water meets certain very specific requirements

for purity and such water is not required to identify the source of the water.  The FDA did not

consider this omission to be "misleading" because the source of purified water is not a "*material*

*fact*" since in any event the water that is sold is purified.  Beverages: Bottled Water, 60 Fed. Reg.

at 57,103 (emphasis added).

    Moreover, in considering whether an alleged statement is misleading, the Court must

consider "challenged statements read in their entirety and in context".  *Cytyc Corp. v.*

*Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998).  Bottled water labeled as

"purified drinking water" is clearly making a claim that the water as currently constituted is

purified, not that it comes from a pure source.  *See* Beverages: Bottled Water, 60 Fed. Reg. at

57,089 (noting that "purified water" is chemically pure).  Plaintiff does not offer any plausible

explanation as to how the additional statements concerning the water being "pure" or the source

being "P.W.S." somehow caused him to think that *Aquafina* came from "a source more pure than

either tap water or rivals' water".  (Cmplt. ¶ 32).  Nor is it reasonable to think that adding a

picture of a mountain to an explicit verbal description such as "purified drinking water" could be

considered deceptive in this context.[5]  Nor does plaintiff explain why in any event the source of

the "purified" water makes any difference in the quality of water which has undergone a

purification process.  Finally, as noted *supra*, Defendants actions and/or omissions are all

consistent with FDA regulations and therefore cannot be deceptive.

Plaintiff has in this instance simply conclusorily alleged the legal conclusion that these

alleged statements or omissions are misleading or deceptive.  But, the Court need not accept as

true legal conclusions couched as factual allegations.  *In re Am. Express Co. S'holder Litig.*, 39

F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]onclusory allegations of the legal status of the defendants'

acts need not be accepted as true for the purposes of ruling on a motion to dismiss.").  For

example, in *Strishank & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 402-03 (2d

Dep't 2002), the Court dismissed the claims that Hewlett Packard misleadingly advertised that its

printers contained a free ink cartridge when in fact the printers included only half-full ink

cartridges.  The Court considered the entire printer box and determined that the advertisements

were unlikely to mislead a reasonable consumer acting reasonably under the circumstances.  *Id.*

Courts have consistently dismissed actions when the alleged deceptive or false actions were

alleged in a conclusory manner or where the alleged activity complied with other statues or

regulations.  *See, e.g.*, *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438-39

(S.D.N.Y. 2004) ("[C]onclusory allegations . . . are not sufficient to state a claim under [GBL]

Section 349 in the absence of factual allegations in support thereof."); *Cytyc Corp. v.*

*Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (dismissing claims because

---

[5] At worst, the image would be considered a non-actionable form of puffery.  *See,e .g., Williams v. Gerber Products Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006) (dismissing claim under California statue because "the mere depiction of fruit, or fruit like substances, is not a specific affirmative representation that the product contains those fruits[,]" and "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains the juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified.")

statements that are "consistent with the substantive claims approved by the FDA" cannot be considered either false or misleading); *Samuels v. Old Kent Bank,* 1997 WL 458434 (N.D. Ill. Aug. 01, 1997) (dismissing claims under the Illinois Consumer Fraud and Deceptive Business Practices Act because there was nothing deceptive about cancelling a program when the cancellation was permitted by agreement). This Court should reject as not plausible any claim that Plaintiff was deceived or misled by Defendants' true and correct statements which adhere with FDA regulations and are not plausibly misleading in context.

### C.  Plaintiff Has Failed to Adequately Allege That *Aquafina* Is Not Fit for Its Intended Use

The elements of a claim for a breach of implied warranty are (a) the product at issue is not fit for the ordinary purposes for which such goods are used and (b) that it caused injury as a result.  *See, e .g, Santoro v. Donnelly*, 340 F. Supp. 2d 464, 486 (S.D.N.Y. 2004); *see also Tyler v. Kawaguchi Inc.*, 2006 WL 581184, at *5 (W.D.N.Y. Mar. 8, 2006); *Clarke v. LR Systems*, 219 F. Supp. 2d 323, 331 (E.D.N.Y. 2002); *Pinckney v. Zep Mfg., Co.*, 1997 WL 204903, at *9 (N.D.N.Y Apr. 15, 1997).  Failure to adequately and plausibly allege that a product is not fit for the ordinary purposes for which such goods are used is a grounds for dismissal.  For example, in *Donahue v. Ferolito, Vultaggio & Sons,* the Court dismissed the claims of breach of implied warranty in the labeling and marketing of iced tea and fruit punch beverages because it was not adequately alleged that the beverages caused any ill effects and were not fit for their intended purpose, namely, liquid refreshment.  *Donahue,* 786 N.Y.S.2d at 154-55.

Plaintiff here conclusorily alleges *Aquafina* was not merchantable because it "(a) could not pass without the objection in the trade under its description; (b) it was not adequately contained, packaged and labeled as part of the transaction; and/or (c) it did not conform to the promises and affirmations of fact made on the package and label for the game." [sic]  (Cmplt. ¶

21

48).  Plaintiff makes no allegation anywhere in his complaint that *Aquafina* is not fit for the ordinary use for which bottled water is used, namely for liquid refreshment or that it caused him or others any ill effects.  Nor does Plaintiff explain how any of the specific acts described in the complaint could reasonably or plausibly lead to the conclusions that *Aquafina* "(a) could not pass without the objection in the trade under its description; (b) it was not adequately contained, packaged and labeled as part of the transaction; and/or (c) it did not conform to the promises and affirmations of fact made on the package and label for the game."  *Id*.  Plaintiff does not claim that *Aquafina* did not meet the FDA standards for "purified drinking water"; nor does plaintiff claim that the water was itself not pure; nor does plaintiff explain how a picture of mountains on a bottle of "purified drinking water" could plausibly be a promise or affirmation of anything about the source of the "purified drinking water".  Finally, since the FDA has explicitly exempted "purified drinking water" from having its source on the label, the fact that Defendants did not label the source could not create any issues in the "trade".  Plaintiff's claim should be dismissed for failing to adequately allege a claim for implied breach of warranty of merchantability.

### D.  Plaintiff Has Failed to Adequately Allege Privity with Defendants Sufficient to Sustain Implied Breach of Warranty Claim for Economic Losses

Any implied warranty of merchantability does not extend to a remote purchaser not in privity with the manufacturer when (like here) a plaintiff seeks recovery only for economic loss under a breach of warranty theory, and there is no claim for personal injury or property damage.  *Inter Impex S.A.E. v. Comtrade Corp.*, 2004 U.S. Dist. LEXIS 24431, at *14 (S.D.N.Y. Dec. 2, 2004) ("[A]bsent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty.") (citations omitted); *see also Am. Dredging Co. v. Plaza Petroleum Inc.*, 799 F. Supp. 1335, 1341 (E.D.N.Y. 1992) (no cause of

action "[i]f there is no seller-buyer relationship or sales contract between the parties and the plaintiff does not sustain personal injuries"); (*Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 504 N.Y.S.2d 192, 193-94 (N.Y. App. Div. 1986) (dismissing claim by purchaser of copiers against manufacturers because of lack of privity); *Tandy Computer Leasing v. A.T.C. Control Serv., Inc.*, 526 N.Y.S.2d 327, 328 (N.Y. Sup. Ct. 1988) (dismissing claim by purchaser of computer against manufacturer because of lack of privity even when purchaser bought computer directly from subsidiary of manufacturer).

Here, Plaintiff has not alleged privity with Defendants and claims to have purchased his water at stores like Key Foods.  (Cmplt. ¶ 12).  Plaintiff also states that he "has sustained economic losses and other damages . . . ."  (Cmplt. ¶ 50).  Because he has not alleged any personal injuries, and because he has not alleged privity with Defendants, Plaintiff's claim for breach of implied warranty must be dismissed.

<u>E.  Plaintiff Has Failed to Adequately Allege a Claim for Unjust Enrichment</u>

Plaintiff's allegations of unjust enrichment must be dismissed because (a) Plaintiff does not adequately allege a direct and substantial relationship between Plaintiff and Defendants; (b) Plaintiff did not adequately allege a deceptive act; and (c) Plaintiff's unjust enrichment claim depends upon the claims that should be dismissed -- violating GBL § 349 and/or breaching an implied warranty of merchantability --therefore, the unjust enrichment claim must also be dismissed.

Plaintiff has not alleged the requisite relationship with Defendants by alleging that he purchased the product from third-party retailers.  (Cmplt. ¶ 12).  Unjust enrichment is a quasi-contractual remedy, and at a minimum a quasi-contractual relationship must be alleged.  *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 333-334 (S.D.N.Y. 2003) (dismissing claim where no allegation of contractual or quasi-contractual relationship with

defendants).  An unjust enrichment claim requires some type of direct dealing or actual, substantive relationship with a defendant.  *In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227, 232 (S.D.N.Y. 2001); *Redtail Leasing, Inc. v. Bellezza*, 1997 U.S. Dist. LEXIS 14821, at * 22 (S.D.N.Y. Sept. 30, 1997).  "The requirements that the defendant be enriched at the plaintiff's expense and that good conscience necessitate that the defendant make restitution to the plaintiff, clearly contemplate that the defendant and the plaintiff must have had some type of direct dealing, an actual relationship."  *In re Motel 6 Sec. Lit.*, 1997 U.S. Dist. LEXIS 3909, at *21 (S.D.N.Y. Apr. 2, 1997); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004) (dismissing claim because allegation was that Defendants had received excess compensation from their own customers but not from plaintiff).  Here, as described *supra*, Plaintiff did not have direct dealings or an actual, substantive relationship with Defendants such that they can assert a claim of unjust enrichment.  Plaintiff alleges that he bought *Aquafina* cases and bottles from independent retail stores and not from Defendants. (Cmplt. ¶ 12).  Additionally, as described *supra*, plaintiff has not adequately alleged a deceptive act and as such Plaintiff's unjust enrichment claim is deficient.  *See, e.g., Baron*, 840 N.Y.S.2d at 448-49 (claim dismissed as conclusory allegation of deception meant that plaintiff failed to allege that defendant possessed of money belonging to plaintiff).

Finally, Plaintiff's unjust enrichment claim must be dismissed if Plaintiff's other two state law claims are dismissed, because Plaintiff's unjust enrichment claim depends upon the claims of illegality made in those other claims.  When an unjust enrichment claim hinges on practices claimed by the plaintiff to be illegal and the allegations of illegality in the complaint fail, the unjust enrichment claim must also be dismissed.  *See, e.g., Kramer v. Pollock-Krasner Found*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995) (dismissing unjust enrichment claim because of

24

dismissal of antitrust claims upon which unjust enrichment claim was based). Here, Plaintiff asserts that the "unjust benefits were conferred on Defendants by consumers as a direct result of the omissions and mislabeling made by Defendants" and thus Plaintiff has made this cause of action hinge on his other cause of action. (Cmplt. ¶ 52). As a result, Plaintiff's claim for unjust enrichment must necessarily be dismissed if Plaintiff's other actions are dismissed.

## CONCLUSION

Defendants' motion to dismiss should be granted. Plaintiff's claims are preempted by federal law. Congress passed a law determining the standards of identity for purified water as part of a pervasive and comprehensive legislative scheme. Plaintiff seeks to use state law to impose different requirements for purified water in New York than those imposed by the FDA's national standards of identity. These claims are therefore expressly preempted by 21 U.S.C. § 343-1(a)(1) or are impliedly preempted. Plaintiff also does not adequately allege his state law claims because they are conclusory and vague and allege no "plausible" false, misleading or deceptive acts, no cognizable injury under New York law, no privity between the parties, no adequate claim for breach of implied warranty of merchantability or unjust enrichment. Plaintiff's claims should be dismissed.

Dated:  September 19, 2007
        New York, New York

   /s/ Louis M. Solomon                   /s/ Donald H. Tucker, Jr.

| | |
|---|---|
| Louis M. Solomon (LS 7906) | Donald H. Tucker, Jr.* |
| Michael S. Lazaroff (ML 0149) | James M. Parrot (JP 5297) |
| Jennifer Jones (JJ 5987) | SMITH, ANDERSON, BLOUNT, DORSETT, |
| Patrick J. Dempsey (PD 8372) | MITCHELL & JERNIGAN, LLP |
| PROSKAUER ROSE LLP | 2500 Wachovia Capitol Center |
| 1585 Broadway | Raleigh, NC 27602 |
| New York, NY 10036 | (919) 821-6681 |
| (212) 969-3000 | *Attorneys for Defendants Pepsi Bottling* |
| *Attorneys for Defendants PepsiCo, Inc. and* | *Ventures LLC* |
| *The Pepsi Bottling Group, Inc.* | (*admitted *pro hac vice*) |